Good morning everybody. This morning you have on the telephone Judge Joel Flom, Judge Michael Caney, and Judge Michael Brennan. We're here today for oral arguments in a series of cases. These oral arguments are going to be audio only. A couple prefatory remarks. Because we are only proceeding on audio, it may result in some interruptions, including by the judges of the attorneys. So we want to apologize in advance for those. Secondly, I wanted to note that nobody is going to be penalized for any technical difficulties we may have to endure. We'll ensure that each party gets a full and fair hearing as to their time allocations, including rebuttal time. I wanted to note that I, this is Judge Brennan speaking, and I will be breaking in when the advocate is at your rebuttal time. What that means is that when there is the allocated amount of time left, I will just speak up and indicate, counsel, you have two minutes left or three minutes remaining. Remember that it's a running clock such that if you choose to use that rebuttal time, at that point you would reserve the remainder of your time. And then your time allocation would end from there. So with that, we're going to start here with the first cases, which are 19-3159 and 19-3160, Baker v. Atlantic Richfield Company and E.I. DuPont-Junemoore Company. And we're going to begin with Ms. Ryder. Good morning, Your Honors. May it please the Court, I'm Diana Ryder and I represent Appellants Atlantic Richfield Company and BP West Coast Products, LLC. This action was properly removed under the Federal Officer Removal Statute. Under Watson and this Court's reasoning in Bessner and Ruppel, ISNR acted under the Federal Government when it contracted with the Army to produce zinc oxide and when it produced and supplied zinc oxide and white lead carbonate to government contractors in conformance with detailed government specifications for military use during World War II. There is a connection or association between plaintiff's claims that plaintiffs were exposed to lead as a result of ISNR's use and operation of its facilities to produce zinc oxide, white lead carbonate and lead and ISNR's production of these same products under government direction, thus satisfying the for or relating to requirement. And ISNR has asserted a colorable government contractor defense because ISNR was both a government contractor and a subcontractor producing products for government use pursuant to reasonably precise government specifications. We ask that... Judge Brennan, I have a question for you concerning how much of the merits we as the Court are to look to with regard to the third element, the for or relating to element. Judge Van Bocklin here got into some details with regard to the number of contracts involved, for example. How much of that detail are we as a Court to look at in assessing whether or not the Federal Officer Removal Statute has been satisfied? So, Your Honor, with respect to the number of contracts, the District Court erred in concluding that the for or relating to requirement was defeated merely because the plaintiff's lawsuit related not only to ISNR's production for the government during World War II, but also to ISNR's production of materials outside the war effort. ISNR's production for the government under contract and pursuant to Federal specifications is an inseparable part of the conduct at issue in this suit. And under the case law, that's sufficient to meet our burden. In Williams v. Todd Shipyards, for instance, the Fifth Circuit upheld Federal Officer Removal where the decedent was exposed to asbestos while working at defendant's shipyard both during World War II when the defendant repaired the government's ships under contract as well as before and for many years after the war when defendant repaired ships for private parties. And so even though the defendant acted under the Federal government for only some of the relevant period, that was sufficient. And the recent Bourgeois and New Jersey Department of Environmental Protection decisions which we submitted by a 28-J letter support that same point. And your Honor, the District Court made a number of errors in concluding that removal was improper. First, with respect to the acting under element, the District Court's wholly subjective conclusion that ISNR's five defense contracts worth $837,000 in 1944 were too few to satisfy the acting under requirement contravenes the Supreme Court's and this Court's admonitions that Federal Officer Removal is not narrow or limited. Second, also with respect to acting under, the District Court erred in concluding that ISNR merely complied with Federal regulations as Philip Morris did in Watson. The Watson case is readily distinguishable. Using the FTC's required method to test its cigarettes is a far cry from the assistance that ISNR provided in producing critical war materials. Indeed, the Watson Court expressly distinguished cases like this one where a defendant has a contractual relationship with the government to produce an item it needs from the one before it. The Court also erred in concluding that Atlantic Richfield failed to assert a colorable Federal defense because the Court entirely ignored ISNR's direct defense contracts with the Federal government to produce zinc oxide. Because ISNR produced zinc oxide under a contract and pursuant to detailed specifications, Atlantic Richfield has a colorable government contractor defense. The Court also ignored ISNR's production of zinc oxide and white lead carbonate in conformance with Federal specifications as components in paint for paint companies that held defense contracts. Finally, plaintiff's attempt to impose a fifth element for removal, that the defendant must produce a unique product exclusively for the government, finds no support in the case law. The asbestos cases such as Ruffle, which involved asbestos-containing turbans, and Lassiolet, which involved asbestos insulation, illustrate that. Neither court denied removal even though asbestos is a product with many commercial uses. If there are not further questions, I'll reserve the rest of my time for rebuttal. Thank you. You do have about 4 minutes and 15 seconds when we reconvene. We'll next hear from Ms. Costello on behalf of DuPont. Do we have Ms. Costello on the line? Sorry, yes, I'm here. Okay, Ms. Costello, we'll recognize you. Honor Costello of Crow and Mooring on behalf of the DuPont Company and the Camorras Company. For DuPont, plaintiffs did not contest that DuPont meets the first two requirements for federal officer removal. DuPont was a person and DuPont was acting under a federal officer. The only issues then are whether DuPont meets the other two requirements, whether there is sufficient causal nexus between the conduct that the government directed DuPont to take and plaintiff's claims, and whether DuPont has a colorable federal defense. On causal nexus, DuPont meets the requirement because at least some of its challenged conduct using its property and operating its East Chicago facility occurred while DuPont was acting under government direction during World War II. On this point, where the district court erred, was finding DuPont could remove only if DuPont operated under federal direction for the entire time period covered by plaintiff's claims. This finding incorrectly applied a heightened standard and ignores the 2011 amendment to the federal officer removal statute. Ms. Costello, Judge Brennan again, similar questions I asked to Ms. Ryder. At what point do we as the court examine the merits or examine the intertwinement of the respective defendant with the activity charged by the plaintiff? How far do we go? Well, if the court must resolve the merits of the complaint to determine whether a federal officer jurisdiction exists, then removal is appropriate. So that's in here, what plaintiffs, I mean, the issue is whether DuPont's production of Freon-12 resulted in the lead and arsenic contamination that plaintiffs complain of. So that's a merits issue, that removal is appropriate. So at some point, though, we get to the other end of the spectrum. There's got to be some factual averments that take place in the notice of removal that indicate that this does or does not satisfy, for example, the second element, acting under, or the third element, for or relating to. Where should we as the court draw the line? Where is DuPont advocating we draw the line in terms of what we examine and don't examine? Well, I mean, DuPont has made, has shown that it meets the, there's no issue as to DuPont on the acting under because plaintiffs have not contested it. DuPont has shown that it meets the connection or association requirement in undertaking acts at the government's direction, including receiving allocations of lead and building a plant and operating it to manufacture Freon-12, which resulted in waste streams that include lead and arsenic, which is what plaintiffs are suing about. Now the important thing is plaintiffs present no facts undermining DuPont's showing on this They point to a statement by DuPont that it used lead as an input in the production of another product, but that statement about an input of lead does not contradict DuPont's evidence that the production of Freon-12 resulted in an output of lead and arsenic. So here the really, the court should accept DuPont's allegations because plaintiffs have not presented any facts undermining DuPont's showing. The plaintiffs are going to argue here that their factual disclaimer takes them out from underneath this requirement. Quote, this action does not pertain to DuPont's manufacturing production of Freon-12 and the byproduct of the hydrochloric acid, end quote. What is your response, Ms. Costello, to the breadth of that factual disclaimer? The so-called factual disclaimer does nothing to defeat removal here. Plaintiffs have not In the cases that they rely on, the plaintiffs in those cases said things like, plaintiffs disclaimed any cause of action or recovery for, or plaintiff is not bringing any claim for. Plaintiffs don't say that here. Ms. Costello, you're at one minute left. Oh, then I will reserve my remaining time. All right, thank you. We'll now move to counsel on behalf of the plaintiffs. Mr. Flora. Thank you, Your Honor, and may it please the court. Both the Atlantic Ridgefield and DuPont defendants fail to carry their respective burdens to establish a federal officer removal for three reasons. First, each fails to state a plausible federal contractor defect. Second, each fails to state a causal connection between its contributions to the war effort and the injuries suffered by the residents. And third, in the case of Atlantic Ridgefield, it fails to show it was acting under a federal entity during the war. If each set of defendants fails to carry its burden on any one of these prongs, then remand is necessary. Now, the facts here are vital. DuPont relies on two factual avenues. One, that it constructed a free-on-twelve facility with financial backing and oversight by the Defense Plant Corporation from August 1944 through September 1945. And two, that it received five allotments of surplus lead between September 1945 and December 1946 from the Metal Reserve Division of the Reconstruction Finance Corporation, which was established to procure, stockpile, and dispose of strategic critical metals and minerals. Atlantic Ridgefield, Mr. Forrest, similar question that I posed to Ms. Ryder and Ms. Costello. What level of detail are we as a court supposed to be looking at here? The case law provides that if we're getting into a merits discussion, the removal will be proper. But at some point, we have to take a look at the factual averments and the notice of removal to determine whether or not these elements are satisfied. Where do we draw that line? Well, exactly, Your Honor. So the case law in this indicates that basically we do the same rule aid analysis on notice of removal as we would for a motion to dismiss on whether a complaint was sufficient. And when subsequent affidavits are added, this court in Leupol, echoing the Supreme Court in Willingham, say that those amend the notice of removal. So to me, it is akin to a statute of limitations defense in a complaint. A court will typically not dismiss a case for failure to adequately plead that a statute of limitations is met. But where facts are in the complaint sufficient to show that a statute of limitations has expired, then the complaint can be dismissed. It's the same thing here with the notice of removal. We need not go to a jury or anywhere else to look and see whether the specific facts that have been claimed by both Atlantic Richfield and DuPont are at least contended. They're not. They're all straightforward. And we can look at those facts and say, based upon the facts provided in the affidavit and in the notice of removal, is there a meritorious claim here? And so I think the answer to your question, Your Honor, is the court can go as into detail on the merits as the notices of removal and the affidavits allow. Yes. Continuing on, Atlantic Richfield similarly has two factual avenues. First, that its predecessor, IS&R, produced and sold white lead carbonate pigment, lead, and zinc oxide to entities who in turn use those materials to make products for sale to the held five contracts worth only $837,000 for the sale of zinc oxide to the Army in the single year in 1944. Now, as to DuPont, its Freon-12 production is squarely not part of this case. The court's already noted the First Amendment complaint specifically states that this action does not pertain to DuPont's manufacture and production of Freon-12 and the byproduct of hydrochloric acid. Now, for starters, that's not even a disclaimer. What it is saying is point has nothing to do with the Freon-12 facility. Now, we can compare that to what have been called disclaimers in Kelleher, Batchelor, Siders, Doherty, and Reinbold. And we see that this is, if it needs to be called a disclaimer, absolutely the factual category, not the jurisdictional category. And Doherty might explain it fast. The problem with so-called jurisdictional disclaimers is that they try to disclaim essentially any cause of action under the Constitution or a various set of circumstances that would be federal defenses or federal claims. The problem with those kind of disclaimers is that at the outset, you have no idea what facts matter. Here, we have specifically said the facts that matter or more importantly, the facts that don't matter are Freon-12 production on behalf of DuPont. I will also note that we have the dispute over the LVG affidavit. And it is DuPont's position that the affidavit only goes to, or the letter to the EPA that was originally in her affidavit, that that only goes to the input of lead versus the output. It merits note that what the question from the EPA that was answered was what production was done containing lead and lead containing or using lead and lead containing materials. As far as the distinction between lead in versus lead out, your honors, to the best of my knowledge, there's only two ways that lead is going to come out. Either it was in a lead containing material to begin with, or some sort of nuclear fusion has occurred to change a base element into another element. Now, with the Freon-12 out of the picture, that leaves only DuPont's receipt of five allotments of lead. Now, as we see in Mays versus City of Flint from the Sixth Circuit, and also in Washington versus Monsanto from the Ninth Circuit, that does not satisfy federal officer removal. In Mays, it was noted early on in the case that the Michigan Environmental Department received federal funds. That was not enough. In Washington versus Monsanto, it was even more direct. Monsanto received funding from the government to expand its PCB production, and that still was not enough. But even were it somehow enough, the government provided absolutely no specifications on the lead. Now, DuPont has said that the specifications are the quantity it was given, but let's keep in mind the requirement under Boyle and every case that is dealt with the federal contractor defense is that there must be reasonably precise specifications. Merely specifying a quantity is far removed from reasonably precise specifications. Indeed, the Ninth Circuit's decision in Kabalchi, I'm not sure of the pronunciation, but it would have to be deemed contrary to any ruling of this court. It would find mere receipt of a quantity is sufficient because there, there was about 1,600 cartons of fireworks that were designated by the government to be held and disposed by the company. And yet, that was not enough for removal. And it also merits note that the touchstone of federal contractor defenses is that the government made me do it. The fact that DuPont received shipments of lead has nothing to do with the government making DuPont pollute. And finally, DuPont was not under the direction of the government in doing any of that. There is, under Boyle, there is a requirement not only that the government have a contractual relationship and reasonably specific requirements or reasonably precise specifications. There is the requirement that the government, the obligations to the government, forced a conflict between the contractor's obligations to the government and the contractor's obligations under state tort law. And that is absolutely not here. There's no specifications whatsoever. There was nothing from the government that says you needed to pollute. This is a far cry from the New Jersey Department of Environmental Protection cases, which have been cited in the recent notices of additional authority. But in both of those cases, there were specifications as to waste disposal. Indeed, in the latter of the two cases, unfortunately, the specifications were to dump it in the middle of the Delaware River if expediency was so served. So, we have none of that here. Transitioning over to Atlantic Richfield, it's important to break up the zinc oxide from the lead carbonate and the lead. The zinc oxide is the only contract directly between Atlantic Richfield's predecessor and the government. That's it. Now, Atlantic Richfield has cited regulations dealing with zinc oxide pigment, but Atlantic Richfield has not cited regulations dealing with zinc oxide itself. And that's what these contracts were for. They were for zinc oxide, which is a standard inorganic compound. There are no specifications for zinc oxide because it'd be the same as providing specifications for water. It's an existing compound. It is the epitome of an off-the-shelf product. Now, as the brief goes through and recent court decisions from the Fourth Circuit and the Ninth Circuit have shown quite concretely, there is no basis for federal officer removal when the contractor is doing nothing more than selling to the government a standard commercial product that it would sell to anyone else in the market, generally called an off-the-shelf product. The Fourth Circuit just found in Baltimore, Mayor of Baltimore, that that is not enough. The Ninth Circuit had found before in Washington versus Monsanto that that's not enough. And in the decision that was cited to the court by me last night, regrettably, I just found it last night. The Ninth Circuit again, in a case mirroring Mayor of Baltimore, again found that off-the-shelf products are not enough. And it fails for multiple reasons. In those cases, it failed because there is no causal connection whatsoever between the government's purchase of an off-the-shelf product and the creation and building of the product. But it also fails the all of the concern of the first two or the second and third prong of the federal officer removal statute need not even be dealt with if the court finds that the entities fail the federal contractor defense because that's their only colorable defense. In Boyle, the Supreme Court specifically gave two illustrations of where the contractor would fail merely by engaging in by the government for cooling, as the Supreme Court said, would not be a sufficient defense as a government contractor to avoid liability under state law for not putting in safety measurements. Further, looking at the zinc oxide pigment, the white lead carbonate, and the lead that were subject to at a high level federal regulations, the Supreme Court in Watson is, it requires highly detailed, or it's not sufficient for even highly detailed, monitored, and supervised agencies or firms acting in a regulated environment. Watson is from 2008. That's prior to the 2011 amendments, which added that phrase or relating to, correct? You're correct, Your Honor, but Watson is not affected by the 2011 amendment. The 2011 amendment affected only the third prong, the causal nexus or the causal requirement. What Watson focused on is the acting under requirement. Numerous courts since the 2011 amendment have continued to apply the Watson reasoning, including this court in Lujan and Panther-Branch. Indeed, as recently as the Fourth Circuit in Baltimore just relied on the Watson reasoning, the Fourth Circuit specifically noted that no matter how detailed the government regulation or how intensely the entity's activities are supervised and monitored, it is not sufficient that you merely participate in a regulated environment. In Watson, an important note is to look closely at particularly Atlantic Richfield's briefing, but the standard that they've tried to force in has been taken from the Second Circuit and Isakson, where it's a misreading of Watson. Under the Isakson approach, they read the Watson distinction of the Winters case, which says that it is sufficient that the Isakson standard claims it is sufficient to be assisting the government to meet the acting under requirement. That's not what Watson said. What Watson said is, what we can use to readily distinguish Winters from the Fifth Circuit is at least there's the contractor, an actual contractor, was aiding the government. An entity such as Philip Morris isn't aiding the government whatsoever. Indeed, Philip Morris, like Atlantic Richfield, does have certain limitations on sale of products. Some of what Atlantic Richfield relies on is that it could not sell certain lead products, certain other products outside of the government. There's already limitations on the sale of products in cigarettes as well, say persons under the age of 21. Speaking to the 2011 amendment, I will briefly note that the Fifth Circuit's decision, Latiolus properly points out that the amendment does not need to change the causal connection requirement for courts such as the Seventh Circuit. This is footnote eight of Latiolus, for courts such as the Seventh Circuit that already took a more expansive approach to interpreting causal connection. And Mr. Moore, that Fifth Circuit case, that's been heard on Bonk and we're awaiting an opinion. Is that correct? No, Your Honor. Yes, it has been heard on Bonk, but the opinion was issued in February. I believe it was the defendants who submitted that to the court in their first notice of supplemental authority. Very good. You've got about 15 seconds left if you want to wrap up, Mr. Flora. Yes. Thank you, Your Honor. Because both the Atlantic Richfield defendants and the DuPont defendants failed to carry their respective burdens to show that they acted under a federal entity, that their conduct was causally connected to the relationship, that they were government contractors adhering to reasonably precise specifications that prevented them from adhering to their state law duties of care. This action must be remanded to the Lake County Superior Court. Thank you, Your Honors. Thank you, Mr. Flora. Ms. Ryder, we're going to go back to you. You've got two minutes remaining. Thank you, Your Honor. As Judge Brennan suggested, the court must accept as true a removing defendant's allegations where, as here, a plaintiff makes a facial attack on removal. Here, plaintiffs have not introduced any facts to dispute the allegations. And based on those allegations and the record, Atlantic Richfield has satisfied each element of federal officer removal. And under this court's case law in Bessner and the Third Circuit's decision in Papp, those must be accepted as true. Moreover, in analyzing the for or relating to requirement, the Supreme Court has said in Jefferson v. Acker that the court must credit the defendant's theory of the case. Here, the court has said that the defendant's theory of the case is correct, but the court has not provided a definition of its facilities to produce products for the government under detailed government specifications. So the for or relating to requirement is satisfied. Now, opposing counsel says that zinc oxide is the only direct contract that ISNR has with the government in the record. And that's correct, but that's enough to establish acting under. Under Watson, a federal officer acts, excuse me, a private contractor acts under a federal officer when it both assists the federal government in carrying out its duties and is subject to government guidance and control. And here, it's undisputed, as the district court observed, that ISNR, quote, operated facilities during the World War II period where it produced materials the government needed to support war effort. That's enough to satisfy the assistance requirement. And with respect to control, ISNR contracted with the army to produce zinc oxide for government use and through detailed specifications, the army controlled the production of zinc oxide. And so not only does Watson predate the 2011 amendment, as Judge Brennan pointed out, it also supports our opinion. Moreover, contrary... Thank you, Ms. Ryder. Your two minutes is up. I appreciate it. We'll now move to Ms. Costello. You've got one minute on rebuttal. Thank you. There is no dispute here that plaintiffs base their claim on lead and arsenic contamination. What plaintiffs' arguments on their disclaimer ignores is the fact that DuPont's federal defense on Freon 12 is a defense to liability for lead and arsenic contamination. So if this case were remanded, DuPont would be put in the position of presenting that federal defense on Freon 12 to a state court. That's exactly what the federal officer removal statute is designed to prevent. On the colorable federal defense issue, plaintiffs do not dispute that DuPont has a colorable federal defense on Freon 12. And given the vagueness of their allegations, which are focused on DuPont's use of its property and operation of its facility, the presence of lead at the East Chicago property, at the government's direction, is sufficient for DuPont to state a colorable federal defense on lead because it fits within those allegations. And I think it's also worth noting that plaintiffs include a strict liability claim. So just the fact that the lead is there is a basis for liability. Thank you, Ms. Costello. Thank you, Ms. Ryder. And thank you, Mr. Flora. The case will be taken to our advisement, and we appreciate your arguments this morning.